# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PITTSBURGH UNIVERSAL, LLC** | : CIVIL ACTION |
| | : |
| v. | : |
| | : NO. 16-1548 |
| **SEAN MYKLEBY,** *et al.* | : |

**KEARNEY, J.**                                                                December 16, 2016

## MEMORANDUM

An employer seeking to enforce restrictive covenants against a valued departed employee may retain its long-standing business counsel to pursue equitable relief. The lawyers, while appreciating the employer client's confidence, must ensure they have no pre-existing fiduciary relationship with the departed employee which may be substantially related to the present lawsuit. While we will allow counsel formerly working with, or for, an employer to later sue the same business on behalf of individual claims not involving direct client confidences, we cannot allow a personal lawyer defending the employee in 2010 involving issues likely concerning the terms of new employment with the employer client to later choose to represent the employer against the same employee when he departs for yet another employer. The key is whether the employer's lawyer would have, as an objective matter, inquired from the former employee about issues now involved in his case against the former employee. In a narrow ruling based only the facts before us, we disqualify the employer's law firm when it represented both the employer and employee at the same time in an earlier restrictive covenant case when consideration for a new non-compete with the employer client would have been addressed and when the employee now claims he received no consideration for his restrictive covenant with the employer.

## I. Facts

Pittsburgh Universal d/b/a Cool Pair Plus ("Cool Pair") sued its former employee Sean Mykleby alleging Mr. Mykleby's current employment with Thermomagnetics & Cryogens, Inc. (TMC) violates the March 4, 2011 non-compete agreement between Cool Pair and Mr. Mykleby.

### A. 2010 Litigation: Mykleby leaves Genesis for Cool Pair.

Before August 2010, Mr. Mykleby worked for Genesis Magnet Services ("Genesis") under a non-compete agreement. Cool Pair hired Mr. Mykleby in August 2010. When Mr. Mykleby left Genesis to join Cool Pair, Genesis sued Mr. Mykleby and Cool Pair alleging Mr. Mykleby's employment with Cool Pair violated their non-compete agreement.

The law firm Metz Lewis Broadman Must O'Keefe LLC ("Metz Lewis") represented Mr. Mykleby and Cool Pair.[1] Metz Lewis defended Mr. Mykleby against Genesis' allegation Mr. Mykleby's employment with Cool Pair violated his non-compete agreement with Genesis. During the litigation, Metz Lewis met with Mr. Mykleby to prepare him for his deposition testimony regarding his employment relationship with Cool Pair, his client relationships, his work expertise, and his notebooks where he recorded work information, then defended him during his deposition. Metz Lewis also prepared discovery responses on behalf of Mr. Mykleby, and he signed and swore to the truth of those responses. Metz Lewis also contacted Mr. Mykleby to discuss the settlement agreement.

Key to our analysis today, Mr. Mykleby did not sign the agreement subject of our present dispute with Cool Pair until after the 2010 Genesis litigation settled in March 4, 2011. Thus, while Metz Lewis zealously represented him, Mr. Mykleby worked without a written employment agreement but Cool Pair's principal may have advised him as to a need for a later contract. These issues are vigorously disputed including in Mr. Mykleby's present motion to

2

dismiss. The parties agree the Mr. Mykleby retained separate counsel to negotiate the specific terms of his March 4, 2011 employment agreement. The Cool Pair employment agreement is extensive with specific terms.

### B. 2016 Litigation: Mykleby leaves Cool Pair for TMC.

From 2010 until 2016, Cool Pair employed Mr. Mykleby. A March 4, 2011 agreement with restrictive covenants prohibiting competing and soliciting customers may govern his employment and post-employment obligations. The parties dispute the extent to which Mr. Mykleby learned new skills, obtained new customers or increased his expertise during these six years. Mr. Mykleby resigned from Cool Pair in September 2016 and shortly thereafter, his attorney disclosed he was working for TMC in California.

Similar to Genesis in 2010, Cool Pair sued Mr. Mykleby and his new employer TMC in this Court and, on the same day, TMC sued Cool Pair in California. In both suits, Cool Pair hired the same Metz Lewis to now oppose Mr. Mykleby. Mr. Mykleby moved to dismiss this action arguing, among other things, there is no consideration for his March 4, 2011 employment agreement because he began working in 2010 and received inadequate consideration for signing several restrictive covenants. In our first status conference, Mr. Mykleby's attorney advised he had just learned of a potential conflict due to the 2010 representation. Shortly thereafter, he moved to disqualify Metz Lewis from representing Cool Pair because Metz Lewis gained confidential information during its prior representation of Mr. Mykleby, which it could now use to Mr. Mykleby's disadvantage.

3

## II. Analysis

We begin with the framework "[any] doubts regarding the existence of a violation of an ethical rule should be construed in favor of disqualification."[2] Pennsylvania Rule of Professional Conduct 1.9(b), which applies to us under Local Rule 83.3(A)(2), provides, "a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client ... about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter. An attorney may not use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known."

Disqualification is fact sensitive. In *Realco Servs., Inc. v. Holt*, an attorney jointly defended two corporate entities in litigation and then, in a later lawsuit, he represented a new party against his former client.[3] His former client moved for disqualification under Rule 1.9 because the attorney had confidential information about the operating agreement at issue from his former representation of the client's corporation.[4] The district court found disqualification proper under Rule 1.9 "[i]f the client in the prior representation might have imparted confidential information to his lawyer to aid the lawyer in dealing with particular issues, and if issues arise in the second suit which would permit the use of such confidences against the original client, the substantial relationship test is met, and disqualification is required...."[5] The court cautioned '[m]ight' is a very broad word, and were it applied liberally, virtually any prior representation of a current adversary could serve as grounds for disqualification ... The lawyer 'might have acquired' the information in issue if (a) the lawyer and the client ought to have talked about particular facts during the course of the representation, or (b) the information is of such a

4

character that it would not have been unusual for it to have been discussed between lawyer and client during their relationship."[6] Because the attorney "needed to have a clear understanding of the operating relationship between the companies to be able to meet such an argument" in the earlier case, and because the operating agreement is in issue in the current case, the attorney "might have acquired" confidential information substantially related to the case and must be disqualified under Rule 1.9.[7]

On the other end of the spectrum, courts have declined disqualification where there is little factual overlap between the present case and the earlier representation. In *Focht v. Bryn Mawr Hosp.*, the attorney defended Bryn Mawr Hospital in two medical malpractice cases.[8] The attorney then changed firms and represented a plaintiff suing the hospital for medical malpractice.[9] The hospital moved to disqualify under Rule 1.9 because the attorney gained confidential information "regarding formulation and enforcement of hospital policy and procedure, supervision of hospital personnel, methods of determining professional competence, information regarding the compilation and existence of credential files and documents, written and unwritten responsibilities of physicians, information concerning venue, and detailed financial information concerning the hospital's net worth."[10] When deposed, the attorney could not recall any confidential information she learned about the hospital.[11] Another attorney from her former firm swore the alleged confidential information the attorney had would not have relevance to the medical malpractice cases and another practice area in the large law firm holds the hospital's confidential information.[12] The court did not disqualify the counsel because the attorney "cannot be assumed to have acquired confidential information pertinent to every medical malpractice case naming [hospital] as a defendant, merely because of her participation in

5

[the hospital's] representation as a single litigation associate in a large 'full service' law firm, where each facet of representation is entrusted to a different department."[13]

In *Javorski v. Nationwide Mut. Ins. Co.*, an insurance company moved to disqualify the insured's attorney, a former in-house counsel, in an insurance bad-faith action.[14] The insurer argued the attorney had confidential information regarding how the insurer handles its uninsured motorist claims arising from his former employment with the insurer.[15] The court applied *Realco* and found the attorney did not have confidential information capable of disadvantaging the insurer.[16] The court "note[d] that courts have distinguished an attorney's knowledge of techniques and defense theories from facts and confidential information."[17]

After evaluating the facts, including affidavits and the underlying documents in the 2010 Litigation, we find this case is too close to *Realco* and not similar enough to *Focht* and *Javorski*. While each employment agreement must be separately evaluated and it is hard to find advice on one agreement necessarily applies to all agreements, the issues arising from whether Mr. Mykleby told Metz Lewis anything about the consideration for his 2010 employment with Cool Pair more than overcomes our hesitancy to disqualify Cool Pair's chosen counsel.

### C. Metz Lewis has a substantial relationship with Mr. Mykleby.

Mr. Mykleby seeks to disqualify Metz Lewis from representing Cool Pair because Metz Lewis gained confidential information during its prior representation of Mr. Mykleby it could use to Mr. Mykleby's disadvantage now. Mr. Mykleby argues there are four areas Metz Lewis might have acquired confidential information in the earlier lawsuit relevant to the present litigation and which disadvantages Mr. Mykleby: (1) information regarding the circumstances under which Mr. Mykleby signed the non-compete agreement with Cool Pair; (2) information regarding customers who followed Mr. Mykleby from Genesis to Cool Pair; (3) information

6

regarding Mr. Mykleby's expertise with Sumitomo cool head repair and how he developed it; and, (4) information regarding Mr. Mykleby's work related notebooks.

Because we find Metz Lewis must be disqualified because it might have acquired confidential information regarding the circumstances under which Mr. Mykleby signed the restrictive covenants with Cool Pair, we need not examine the other three areas.[18]

Mr. Mykleby argues Metz Lewis might have acquired confidential information concerning the circumstances Mr. Mykleby would have signed a non-compete agreement with Cool Pair in 2010-2011. Mr. Mykleby cites to Metz Lewis' deposition preparation outline with topics "signing and contents of non-solicitation agreement" and "Baldwin/Balet's promises/discussions re Salary, Role, Duties, etc." to show areas where Metz Lewis might have acquired confidential information substantially related to current case.

Mr. Mykleby argues the March 4, 2011 employee agreement is unenforceable based on a lack of consideration.[19] Mr. Mykleby argues the facts surrounding signing the non-compete agreement are relevant and disputed in the current litigation. Even Cool Pair recognizes the importance of these facts, "[t]he crux of Cool Pair's Complaint against Mykleby is that he is violating the post-employment restrictions of his March 4, 2011 Employment Agreement with Cool Pair...."[20] Metz Lewis could use the confidential information to Mr. Mykleby's disadvantage in the current litigation because he will be cross examined and possibly impeached by a Metz Lewis counsel using confidential information learned during their representation in the prior litigation.

"The question is not whether the attorney actually acquired confidential information, but whether "confidential information that might have been gained in the first representation [may be] used to the detriment of the former client in the subsequent action."[21] Unlike *Javorski* and

7

*Focht* where the attorneys represented a corporate defendant in factually unrelated cases, here, the same confidential factual information Metz Lewis might have acquired is at issue.

In finding no need to disqualify in *Javorski*, the court distinguished *Realco* because the attorney in *Javorski* had "knowledge of techniques and defense theories" of the former client unlike in *Realco* where the attorney held "facts and confidential information" about the former client.[22] We follow the precedent of *Realco* because Metz Lewis's relationship with Mr. Mykleby relates to facts and confidential information it might have acquired in its prior representation.

Cool Pair argues any confidential information Metz Lewis might have acquired regarding the non-compete agreement is either stale or now public. While we agree this case is close call, we bear in mind "[any] doubts regarding the existence of a violation of an ethical rule should be construed in favor of disqualification."[23] We disqualify Metz Lewis under Rule 1.9 because during its prior representation of Mr. Mykleby it might have acquired confidential information regarding the circumstances of Mr. Mykleby's restrictive covenants with Cool Pair and could use it to disadvantage Mr. Mykleby. Our holding is narrow and the fact requiring disqualification is Metz Lewis would likely cross-examine and possibly impeach Mr. Mykleby on facts it might have acquired during deposition preparation with Mr. Mykleby when he was a client.[24]

### III. Conclusion

Neither party elected to adduce live testimony at our hearing. Based on affidavits and the objective standard persuasively reasoned in *Realco*, we find both : Metz Lewis and Mr. Mykleby ought to have talked about the consideration for any new employment restrictive covenant from Cool Pair while litigating with Genesis <u>and</u> this information concerning the terms of Mr. Mykleby's relationship with Cool Pair in 2010 and 2011 is of such a character that it

8

would not be unusual for Metz Lewis and Mr. Mykleby to have discussed his present employment terms while defending Mr. Mykleby on a restrictive covenant challenge from his immediately preceding employer. Our findings are buttressed by Mr. Mykleby's core defense before us as to whether the March 4, 2011 employment agreement is void for lack of consideration. Metz Lewis ought to have talked about this issue and it would not have been unusual for it to talk about this key issue when preparing Mr. Mykleby for discovery and trial in the Genesis 2010 litigation. In today's Order, we disqualify Metz Lewis from any further representation of Cool Pair in this litigation.

---

[1] Neither party has addressed whether Mr. Mykleby and Cool Pair signed a joint defense waiver of conflicts during the first litigation.

[2] *Jordan v. Philadelphia Housing Authority*, 337 F. Supp. 2d 666, 672 (E.D.Pa. 2004)(internal citations omitted).

[3] 479 F. Supp. 867, 871–72 (E.D. Pa. 1979).

[4] *Id.* at 872-875.

[5] *Id.* at 871–72.

[6] *Id.*

[7] *Id.* at 878.

[8] 16 Pa. D. & C. 4th 150, 152 (Pa. Com. Pl. 1992).

⁹ *Id.*

¹⁰ *Id.* at 155.

¹¹ *Id.* at 156.

¹² *Id.*

¹³ *Id.* at 157.

¹⁴ No. 06-1071, 2006 WL 3242112 at *4 (M.D. Pa. Nov. 6, 2006).

¹⁵ *Id.* at *6-7.

¹⁶ *Id.* at *7.

¹⁷ *Id.*

¹⁸ We agree with Cool Pair's argument Mr. Mykleby did not meet his burden for disqualification based on confidential information acquired about the notebooks, client relationships, or work expertise. Assuming Metz Lewis might have acquired confidential information in these areas in 2010 or 2011, the 2010 Genesis litigation made the information public and has "been rendered obsolete by the passage of time." *See* Pa.R.P.C. 1.9 Explanatory Comment 3.

¹⁹ ECF Doc. No. 61 at 6.

²⁰ ECF Doc. No. 71 at 9.

²¹ *Javorski*, 2006 WL 3242112, at *6 (*quoting Realco,* 479 F.Supp. at 871).

²² *Javorski*, 2006 WL 3242112, at *7.

²³ *Jordan*, 337 F. Supp. 2d at 672.

²⁴ We do not disqualify Metz Lewis merely because he represented Mr. Mykleby in litigation regarding a restrictive covenant and now represents an adversary under a different restrictive covenant. The substantially related finding does not rely on the fact they are both non-compete agreements, because non-compete agreements are unique and require a fact determination on a case-by-case basis. *See Missett v. Hub Intern. Pennsylvania, LLC*, 6 A.3d 530, 540 (Pa. Super. 2010).